UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

CASE NO. 1:17-CV-24380-MORENO/LOUIS

ESTHER VENTURA DE RENDON and JUAN
MARIA RENDON GUTIERREZ,

    Petitioners,

vs.

VIVIANE VENTURA and MICHAEL D.
VENTURA,

    Respondents.
_____/

## REPORT & RECOMMENDATION

THIS CAUSE comes before the Court on Petitioners' Petition to Confirm International Arbitration ("Petition") (ECF No. 1-3). Petitioners seek confirmation of an arbitral award ("Award") issued in Bogota, Colombia on April 27, 2016. The matter was referred to the undersigned Magistrate Judge to take necessary and proper action as required by law with respect to any and all pretrial matters pursuant to 28 U.S.C. § 636(b)(1)(A) and the Magistrate Judge Rules of the Southern District of Florida (ECF No. 35). Upon consideration of the Petition, Respondents' Answer thereto, argument received at a hearing conducted on June 12, 2018, and upon review of the record as a whole, the undersigned recommends that the Petition to Confirm International Arbitration be **GRANTED** as explained below.

## I. BACKGROUND

The underlying dispute between the parties arises from the ownership status of shares of Laboratorios Lafrancol, S.A. ("Lafrancol"), a pharmaceutical company in Colombia. Respondents each asserted a claim to ownership of certain shares and otherwise threatened litigation against the Petitioners. To resolve the putative disputes, in September 2010, each of the two Respondents entered into a settlement agreement with Lafrancol and with Petitioners Esther Isabel Ventura de Rendon Juan Maria Rendon Gutierrez (collectively, the "Settlement Agreements"). Petitioners agreed to pay $1.1 million USD to Respondent Viviane Ventura, and $3.8 million USD to Michael Ventura. In exchange, all Parties agreed not to initiate any actions against the others. The Settlement Agreements also included confidentiality provisions that prohibited the Parties from publicly discussing the terms of the agreements or each other.

The parties further agreed to submit any disputes arising out of the Settlement Agreements to private arbitration:

> Arbitration Clause.- The Parties agree to submit any and all controversies, disagreement, disputes or claims resulting from the efficacy, execution, interpretation, modification or termination of this Settlement Agreement to an arbitral tribunal composed of three (3) arbitrators appointed upon mutual agreement by the Parties. Should no agreement be reached within ten (10) business days upon receipt of the relevant request by one Party to the other, arbitrators shall be appointed by the Center of Conciliation and Arbitration of the International Chamber of Commerce of Paris. Bogota shall be the seat of the arbitration. The arbitral tribunal shall rule according to law and shall be subject to the rules of the ICC.

Petition, at ¶ 9 (ECF No. 1-3).

Two years after the payment of settlement proceeds, Lafrancol was sold for over $560 million USD. Respondents immediately initiated a criminal complaint in Colombia, in which they claimed that the Settlement Agreements were predicated on Petitioners' representation that the company was worth only $30 million. Respondents also initiated mediation proceedings and

petitioned the company to recognize their status as shareholders. Respondent Viviane also made certain public statements on the radio regarding the Settlement Agreements and disparaging Petitioner Esther De Rendon.

Petitioners initiated arbitration proceedings in the International Chamber of Commerce, alleging that by requesting mediation and making public statements to the media, Respondents had breached the terms of the confidentiality provisions in the Settlement Agreements. Petitioners demanded damages in the total amount of $2.4 million USD. The arbitrators agreed that Respondents had breached the Settlement Agreements and awarded damages, but in less than the demanded amounts: the award entitles Petitioners to recover $800,000 in damages against Michael Ventura, and $100,000 against Viviane Ventura. Respondents have not satisfied the award and have instituted annulment proceedings, which remain pending in Colombia. Answer at ¶¶ 29, 30.

On September 6, 2017, Petitioners instituted the present action by filing their Petition to Confirm International Arbitration Award ("Petition") in Miami-Dade Circuit Court (ECF No. 1-3). The Petition is governed by the Federal Arbitration Act and the New York Convention, which provide original jurisdiction to federal courts over all confirmation proceedings for international arbitration. *See* 9 U.S.C. § 203. Accordingly, Respondents removed the Petition to this Court (ECF No. 1). Following unsuccessful bid to stay the proceeding, Viviane Ventura answered the Petition on January 12, 2018 ("Answer") (ECF No. 21). Once served, Respondent Michael Ventura noticed joinder in Ms. Ventura's Answer (ECF No. 39). Petitioners did not reply to the Answer, but they did move for entry of final judgment and advanced that the motion could be treated as their reply (ECF No. 24). Respondents filled a response in opposition (ECF No. 27)

and additionally moved for entry a briefing schedule and for discovery (ECF No. 23), which this Court has denied by separate order. The Petition is ripe for disposition.

## II.   LEGAL STANDARD

The New York Convention provides a cause of action in federal court for a party seeking to confirm an international arbitral award between citizens of foreign states. *See* 9 U.S.C. § 207. Chapter 2 of the Federal Arbitration Act incorporates the New York Convention into federal law in order to "encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n.15 (1974). Article IV of the New York Convention sets forth the requirements for the recognition and enforcement of awards subject to the New York Convention. Specifically, Article IV provides that a party seeking recognition of the award must supply the court with the original or a certified copy of the agreement and the arbitral award, together with a certified translation of the document(s). *See* New York Convention, art. IV(1), (2).

When reviewing an arbitral award, "confirmation under the Convention is a summary proceeding in nature, which is not intended to involve complex factual determinations, other than a determination of the limited statutory conditions for confirmations or grounds for refusal to confirm." *Chelsea Football Club Ltd. v. Mutu*, 849 F. Supp. 2d 1341, 1344 (S.D. Fla. 2012) (quoting *Zeiler v. Deitsch*, 500 F.3d 157, 169 (2d Cir. 2007)). "Because the [Federal Arbitration] Act creates a presumption in favor of confirming arbitration awards, judicial review of arbitral decisions is limited and a court must give considerable leeway to the arbitrator, setting aside his or her decision only in certain narrow circumstances." *Gerson v. UBS Fin. Servs., Inc.*, No. 12-22087-CIV, 2012 WL 3962374, at *5 (S.D. Fla. Sept. 10, 2012) (internal quotations and citations

omitted). A court "must confirm an arbitration award under the Convention unless one of the seven enumerated defenses in Article V apply." *Sural (Barbados) Ltd. v. Gov't of the Republic of Trinidad*, No. 1:15-CV-22825-KMM, 2016 WL 4264061, at *3 (S.D. Fla. Aug. 12, 2016), *appeal dismissed sub nom. Sural (Barbados) Ltd. v. Gov't of the Republic of Trinidad & Tobago*, No. 16-15942-CC, 2017 WL 8232181 (11th Cir. Dec. 18, 2017); *see also* 9 U.S.C. § 207. Accordingly, a "party seeking to avoid summary confirmance of an arbitral award has the heavy burden of proving that one of the seven defenses applies." *VRG Linhas Aereas S.A. v. MatlinPatterson Glob. Opportunities Partners II L.P.*, 717 F.3d 322, 325 (2d Cir. 2013). "If a party cannot establish one of the specified grounds for vacatur, the court must confirm the arbitral award." *Gerson*, 2012 WL 3962374, at *2.

### III. DISCUSSION

The Parties do not dispute that the Award is subject to the New York Convention or that the Petition satisfies Article IV of the New York Convention. As required by Article IV of the Convention, Petitioners provided certified copies and translations of the Settlement Agreements, which contain the operative arbitration agreements, and the Award (ECF Nos. 1-3; 1-12). Accordingly, Respondents bear the heavy burden of establishing one of the grounds to avoid enforcement.

In resisting confirmation of the Award, Respondents assert five defenses recognized by the Convention. *See* New York Convention, art. V(1)(a)-V(1)(d), V(2)(b). Respondents advance evidentiary support for their objections in the form of two affidavits: the Declaration by Carlos Felipe Mayorga and the Declaration by Luis Gabriel Chavez Ortiz (translated versions at ECF No. 13). Mr. Ortiz's affidavit provides evidence that a criminal investigation of the Petitioners has been initiated by the Respondents and is pending in Colombia; Mr. Mayorga's affidavit

5

explains the status and basis of the annulment proceeding pending with respect to the arbitration award.

Recognizing the limited review available to the Court under the Convention, for the reasons expressed below, the Court finds that Respondents have not met their high burden to establish that the award should not be confirmed.

### A. Article V(1)(a) of the New York Convention

Article V(1)(a) of the New York Convention allows a court to refuse confirmation of an arbitral award where, in relevant part, "said agreement is not valid under the law to which the parties have subjected it or, failing any indication thereon, under the law of the country where the award was made." New York Convention, art. V(1)(a). Respondents argue that the arbitration agreements are invalid under Colombian law because they did not expressly assent to an *international* arbitration, as opposed to a domestic arbitration. Respondents raised this objection before the arbitration panel. Neither party objected to the ensuing Procedural Order, which concluded that the arbitration agreement provided for international, not domestic, arbitration. Award at ¶¶ 46-48 (ECF No. 1-13).

Nonetheless, the Court has a duty to independently determine if a valid arbitration agreement exists. Specifically, Respondents allege that the appointment of two foreign arbitrators (Mr. Cristian Conejero Roos, a national of Chile; and Mr. Rodrigo Zamora Etcharren, a national of Mexico) was contrary to the parties' agreement, which required that their disputes be resolved in a domestic arbitration, with Colombian Arbitrators. Answer at ¶ 21. Respondents' challenge acknowledges the existence of a valid arbitration agreement, and a dispute as to whether the arbitration conducted was consistent with that agreement. In support of their challenge, Respondents cite two cases for the proposition that a party defending against an action

6

to confirm an award can raise the lack of an arbitration agreement as a defense under Article V. *See Czarina, L.L.C. v. W.F. Poe Syndicate*, 358 F.3d 1286, 1293 (11th Cir. 2004); *China Minmetals Materials Imp. & Exp. Co. v. Chi Mei Corp.*, 334 F.3d 274, 279 (3d Cir. 2003). Because there is no dispute here that a valid arbitration agreement exists between these parties, these cases lend no support to Respondents' challenge under Article V(1)(a) of the Convention.

Sustaining an objection raised under Article V(1)(a) requires this Court to find that the arbitration agreements are not valid under the law. Respondents' challenge, by contrast, asks this Court to find that the agreement *as applied* exceeded the scope of the parties' agreement. Considering this Court's "extremely limited" review of arbitral awards, *Kurke v. Oscar Gruss & Son, Inc.,* 454 F.3d 350, 354 (D.C. Cir. 2006), this Court will not disturb the tribunal's conclusion that the arbitration agreement was of an international nature. Having examined the clause *de novo*, the Court finds no merit to Respondents' attack. The parties agreed to be bound by the rules of the International Chamber of Commerce and for appointment of arbitrators by that body; the clause leaves no ambiguity that the agreed-upon arbitration would be conducted according to international rules and procedure. Respondents' challenge to enforcement of the award finds no support on this basis.

### B. Article V(1)(b) of the New York Convention

Article V(1)(b) of the Convention provides a defense against enforcement of a foreign arbitration award where "the party against whom the award was invoked was not given proper notice of the appointment of the Arbitrator or of the Arbitration proceedings or was otherwise unable to present his case." Article V(1)(b) "essentially sanctions the application of the forum state's standards of due process." *Parsons & Whittemore Overseas Co. v. Societe Generale De L'Industrie Du Papier (RAKTA),* 508 F.2d 969, 975 (2d Cir. 1974).

Respondents do not contend that they received inadequate notice or were otherwise prevented from participating in the proceedings. Rather, they argue that they were unable to present their case within the meaning of Article V(1)(b) because the arbitration panel decided issues relating to Respondents' withdrawn counterclaims, for which Respondents did not present evidence. In so doing, Respondents contend, the panel denied their due process because they were precluded from presenting evidence about withdrawn claims. Upon independent review of the Award, the Court finds no basis to substantiate this objection.

The Award memorializes that Respondents' counterclaims were withdrawn and were "consider[ed] dismissed due to lack of legal, contractual and factual arguments supporting the same." *See* Award at ¶ 231. Although the Award explains that that the tribunal "does not observe any merits" in the withdrawn counterclaims or evidence tending to prove the same, the panel concludes that these allegations were "neither developed nor proven." *Id.* Rather than dispose of these claims, the Award concludes that Respondents "have not demonstrated the existence" of the counterclaims on the record presented. Contrary to Respondents' contention, these are not findings but rather summary of proceedings, which accurately comport with the fact that Respondents withdrew their counterclaims. *See* Award at ¶¶ 57-62**.** Respondents do not advance a reading of the Award that supports a due process violation, nor do Respondents proffer any evidence that would support a finding of a due process violation. Indeed, when afforded a contemporaneous opportunity to object to the procedure of the arbitration, Counsel for Respondents affirmatively represented to the panel at its conclusion that he had no objection to the manner in which the proceeding had occurred. Award ¶ 106 & n.2 ("Mr. Mayorga: Certainly, Mr. President, I can ratify that we have been heard, treated fairly, have been given opportunities for reply and so far, we have no objection with regard to the proceedings conducted by the

Tribunal."). Accordingly, the Court finds that Respondents have not met their burden to prove that Article V(1)(b) provides a valid defense against enforcement of the Award.

### C. Article V(1)(c) of the New York Convention

Under Article V(1)(c), a party defending against enforcement of an arbitral award may prevail by proving that:

> The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration, provided that, if the decisions on matters submitted to arbitration can be separated from those not so submitted, that part of the award which contains decisions on matters submitted to arbitration may be recognized and enforced;

New York Convention, art. V(1)(c). This provision allows a party to attack an arbitration of the award predicated upon a matter outside the scope of what was presented at the arbitration hearing. This defense "should be narrowly construed" and requires Respondents to "overcome the powerful presumption that the arbitral body acted within its powers." *Parsons*¸ 508 F.2d at 976. Respondents have not met this burden.

Respondents object that: "the Tribunal exceeded its authority by resolving issues that were not presented to it and developed by the parties in their memorials or the final hearing." Answer at 12. As explained further at the hearing, Respondents object to the Award's conclusion that they had "not demonstrated the existence" of their counterclaims sounding in fraud in the inducement. Respondents contend that because they withdrew the counterclaims, the panel exceeded the scope of the dispute before the arbitrators in reaching this conclusion. Petitioners' counsel observed that despite withdrawing the counterclaims, Respondents never moved to amend the Terms of Reference, which governs the scope of the dispute. Thus, the arbitrators were bound to at least make note of what evidence was presented on the claims. More

9

importantly, the observation that no evidence was presented on the withdrawn counterclaims is not tantamount to a finding that the claims lack merit. There is no error.

### D. Article V(1)(d) of the New York Convention

Article V(1)(d) of the Convention allows a party to challenge confirmation of an arbitral award where "the composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or failing such agreement, was not in accordance with the law of the country where the arbitration took place." New York Convention, art. V(1)(d). Respondents' objection rests on the contention that "there was no valid agreement" to submit disputes to an international arbitration panel, and that the panel disregarded the parties' agreed arbitration procedures by deciding Respondents' withdrawn counterclaims. The Court has already considered, and rejected both of these arguments above, and does not find that Respondents have advanced any additional evidence or support for their propositions.

### E. Article V(2)(b) of the New York Convention

Article V(2)(b) of the Convention provides a defense to confirmation where "recognition or enforcement of the award would be contrary to the public policy" of the country in which confirmation is sought. New York Convention, art. V(2)(b). "The Convention's public policy defense should be construed narrowly and applies where enforcement of the award would violate the forum state's most basic notions of morality and justice." *Costa v. Celebrity Cruises, Inc.*, 768 F. Supp. 2d 1237, 1241 (S.D. Fla. 2011), *aff'd*, 470 F. App'x 726 (11th Cir. 2012) (internal citations and quotations omitted).

Respondents argue that at the time they entered into the Settlement Agreements, Petitioner Viviane Ventura knew that the value of the company was exponentially greater than the valuation on which Respondents purportedly rely in accepting the settlement. Accordingly,

Respondents contend that both the Settlement Agreements and the Award, which was based on Ms. Ventura's allegedly false testimony regarding valuation, were procured by fraud. Respondents allege that this Court should not confirm the Award as contrary to the United States' alleged public policy against confirming awards procured by fraud. *Transmarine*, 480 F. Supp. 352, 358 (S.D.N.Y. 1979).

Respondents' claims are insufficient to find the United States' public policy would be impaired by confirming this Award. To the extent the United States has a public policy in favor of vacating arbitral awards based on fraud, confirmation of this Award does not risk violating that public policy. In this case, the tribunal found that Respondents had breached the confidentially clauses of their Settlement Agreements by demanding mediation and making prohibited public comments to the media.  Evidence that tends to contradict the testimony of Petitioner Ventura, or that undermines the validity of the Settlement Agreements, while potentially relevant to the ongoing annulment proceeding in Colombia, would not demonstrate that the Award at issue in this case was procured by fraud, or that confirmation of the Award would "violate our basic notions of morality or justice."

Respondents cite to two cases for the proposition that this Court should not confirm the Petition pursuant to Article V(2)(b), but neither case advances Respondents position. In fact, in *Europcar*, the Second Circuit remanded a district court's refusal to confirm an arbitral award, stating that "the issue of whether the underlying contract that is the subject of the arbitrated dispute was forged or fraudulently induced [is] a matter to be determined exclusively by the arbitrators." *Europcar Italia, S.p.A. v. Maiellano Tours, Inc.*, 156 F.3d 310, 315 (2d Cir. 1998).

11

Similarly, *G. Angel*, *LTD.*, which deals with a public policy not at issue here, is inapposite to the dispute at hand.[1]

Indeed, the public policy exception "is not available for every party who manages to find some generally accepted principle which is transgressed by the [arbitration] award. Rather the award must be so misconceived that it compels the violation of law or conduct contrary to accepted public policy." *PDV Sweeny, Inc. v. ConocoPhillips Co.*, No. 14-CV-5183 AJN, 2015 WL 5144023, at *12 (S.D.N.Y. Sept. 1, 2015), *amended*, No. 14-CV-5183 (AJN), 2015 WL 9413880 (S.D.N.Y. Dec. 21, 2015), *aff'd*, 670 F. App'x 23 (2d Cir. 2016) (internal citations and quotations omitted). Respondents' arguments fall short of the demanding threshold necessary to show that holding them to the terms of their own Purchase Agreements would violate our basic notions of morality or justice.

### F. RECOMMENDATION

For the foregoing reasons, it is hereby **RECOMMENDED** as follows:

(1) Petitioners' Petition to Confirm International Arbitration Award (ECF No. 1) should be **GRANTED.**

Pursuant to Local Magistrate Rule 4(b), the parties have fourteen (14) days from the date of this Report and Recommendation to serve and file written objections, if any, with the Honorable Federico A. Moreno, United States District Judge. Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the report and bar the parties from attacking on appeal the factual findings contained herein. *See*

---

[1] The Court notes that in Respondents' Response In Opposition to Petitioners' Renewed Motion for Entry of Final Judgment Against Respondent (ECF No. 27), Respondents also cite to *Hesfibel Fiber Optik & Elektronik San Ve Tic A.S. v. Four S Grp., Inc.*, 315 F. Supp. 2d 1365, 1367 (S.D. Fla. 2004) for the proposition that this Court may refuse to confirm the award where it was procured by fraud. That is legally incorrect. The grounds for vacating an award enumerated in 9 U.S.C. § 10 apply in the vacatur posture, not the confirmation posture, as pertinent here.

*LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988); *R.T.C. v. Hallmark Builders*, *Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993).

**DONE** and **ORDERED** at Miami, Florida this 8th day of August, 2018.

_____
LAUREN LOUIS
UNITED STATES MAGISTRATE JUDGE